OPINION
{¶ 1} Appellant Richard Lamar Reynolds appeals a judgment of the Stark County Common Pleas Court convicting him of one count of aggravated trafficking in drugs (Oxycodone), in violation of R.C. 2925.03(A)(1):
"The trial court erred when it permitted the state to impeach its own witness without a showing of surprise.
"Appellant was deprived of the effective assistance of counsel when his trial counsel failed to request an instruction that the prior inconsistent statements of Ms. Hamlin could not be considered as substantive evidence.
"The trial court erred in permitting the state to elicit testimony concerning out-of-court declarations made by a co-defendant.
"Appellant's conviction for aggravated trafficking in oxycodone was against the manifest weight of the evidence."
 {¶ 2} In December of 2001, Daniel Ryser was charged by the Perry Township Police with possession of Oxycodone and trafficking in Oxycodone. He agreed to assist the officer so that he might reduce his pending charges. On January 8, 2002, Ryser received a telephone call from appellant. Appellant informed Ryser that he had just received Oxycodone pills, and asked if Ryser was interested in them.
 {¶ 3} Ryser lived at his parent's home with Ashley Hamlin, the daughter of appellant's girlfriend, Christine Hamlin. Ryser and Ashley had lived with Christine, but moved out of Christine's home in August of 2001, at about the same time appellant moved into Christine's home. Ryser did not like appellant, and Ashley had a difficult time with her mother's relationship with appellant.
 {¶ 4} After receiving the phone call from appellant, Ryser contacted Detective William Yarbrough at the Perry Police Department. Detective Yarbrough went to Ryser's home to set up a controlled buy. He gave Ryser money, which had been photocopied, and then asked Ryser to telephone appellant. Ryser placed the call while Detective Yarbrough sat close to Ryser, listening to the sound from the phone. He heard a man's voice talking to Ryser.
 {¶ 5} Ryser agreed to purchase twenty, 80 milligram Oxycodone pills from appellant for $32.50 per pill. After appellant initially demanded $35.00 per pill, Ryser offered $30.00 per pill, and the two negotiated for the ultimate sale price. Appellant was to deliver the pills in fifteen to twenty minutes. Detective Yarbrough and Perry Township Police detective Jon Wellman were in the house during the negotiations.
 {¶ 6} Appellant did not arrive in the agreed upon time period. Ryser called him back four or five times. Appellant told Ryser that he was having car problems. Eventually, Christine Hamlin arrived at Ryser's home. She brought the Oxycodone, and Ryser paid her $660 instead of the agreed upon price of $650, as he did not have the exact change. Detectives Yarbrough and Wellman were hiding in the kitchen, which was adjacent to the room where the exchange took place. When Christine Hamlin left, Detective Wellman stopped her in the driveway and arrested her. He recovered the money from her pocket, and took her to the Perry Township Police station.
 {¶ 7} After the officers left, appellant called Ryser asking about Christine Hamlin. Appellant told Ryser that he "wanted his fucking money." Ryser told appellant that Christine had car problems. Appellant responded, "It's a good thing because I was getting ready to get my gats and gauges." Appellant uses the phrase "gats and gauges" as a synonym for guns.
 {¶ 8} After taking Christine Hamlin to the police station, Perry Township police officers went with Canton Metro officers to appellant's residence in Canton. Appellant and another man were at the residence. Appellant was arrested, and officers searched his apartment. The officers found crack cocaine in the closet.
 {¶ 9} At the police department, Detective Yarbrough spoke with appellant. Appellant asked the detective what he was being charged with. Yarbrough answered, "Offer to sell." Appellant then asked, "How could I be charged with that when I didn't deliver it?"
 {¶ 10} Appellant was indicted with one count of aggravated trafficking in drugs. Subsequently, appellant was indicted in a separate case for possession of crack cocaine, which was found at his house during his arrest in the trafficking case. The two cases were consolidated, and proceeded to jury trial in the Stark County Common Pleas Court.
 {¶ 11} Christine Hamlin testified at trial. Initially called as a prosecution witness, the trial court later declared her to be a court's witness. At trial, she claimed that she had spoken with Ryser on the phone, and appellant did not speak with Ryser. She testified that she had set up the entire drug transaction. She had earlier pleaded guilty to trafficking in Oxycodone for the incident at issue in the instant case. She admitted that she had given a written statement to police officers the evening of the drug buy implicating appellant. However, she claimed that she did not remember giving the statement, because she was coming down from a crack binge which had caused her to be awake for a few days.
 {¶ 12} In the statement given to police, Hamlin indicated that the drug transaction was a joint effort between her and appellant. She wrote that she and appellant became addicted to crack, and they sold Oxycodone to support their crack habit.
 {¶ 13} Appellant was convicted of aggravated trafficking, but acquitted of possession of cocaine. The court sentenced appellant to a determinate term of incarceration of four years, and suspended appellant's driver's license for one year.
 I {¶ 14} Appellant first argues that the court erred in allowing the prosecutor to impeach Christine Hamlin by use of her prior inconsistent statement. Appellant argues that there is a lack of a showing of affirmative surprise as required by Evid.R. 607, and therefore the prosecutor could not impeach his own witness.
 {¶ 15} Prior to trial, the prosecutor informed the court that Christine Hamlin would be a hostile witness. The prosecutor indicated that over the weekend preceding the trial, Hamlin indicated to the prosecutor that her testimony at trial would differ from the written statement she had given to the police on the evening she was arrested. The court deferred ruling on the prosecutor's request until the witness testified.
 {¶ 16} During the State's case in chief, the prosecutor reached the point where he intended to call Hamlin as a witness. He then renewed his request that the court call Hamlin as a court's witness. The court ruled that the prosecutor should proceed to call her as his witness on direct examination, and if it turned out that she deviated from prior statements, the court would consider the prosecutor's request at that point in time.
 {¶ 17} The prosecutor called Hamlin to testify. She testified that appellant had nothing to do with the sale of Oxycodone to Ryser, and that she had negotiated the entire transaction. The prosecutor asked to approach the bench, and presented the court with a copy of Hamlin's written statement to the police, in which she indicated she and appellant had jointly arranged the transaction. The court declared Hamlin to be a hostile witness and a court's witness, and allowed the prosecutor to impeach Hamlin with her prior written statement.
 {¶ 18} Evid.R. 614(A), provides that the court may on its own motion or at the suggestion of a party, call witnesses, and all parties are entitled to cross-examine witnesses thus called. The decision as to whether to call a witness on its own motion under Evid.R. 614(A) is within the court's discretion, and will be reversed only when the court has abused its discretion. State v. Forehope (1991), 71 Ohio App.3d 435,441.
 {¶ 19} The situation presented by the instant case is analogous to that ruled on by this court in State v. Newell (September 8, 1998), Stark Appellate No. 1998CA00076, unreported. In Newell, the prosecutor made a pre-trial motion to call the victim of domestic violence as a court's witness. The trial court held the motion in abeyance, and the prosecutor called the victim as a prosecution witness. When her testimony differed from the statement she had made initially to the police, the court declared the witness to be a court's witness. This court concluded that the court did not abuse its discretion in calling her as the court's witness, as there was abundant evidence that she had told officers at the scene that appellant was the perpetrator of the assault. Id. In addition, she had signed an incident report and a domestic violence report detailing her account of the attack. Id.
 {¶ 20} In the instant case, Hamlin wrote out a statement for officers immediately after her arrest, claiming that appellant was jointly involved in the drug transaction with her. She also wrote that they sold Oxycodone to support their crack habit. She then changed the story she gave to the prosecutor, and the prosecutor asked that the witness be called as the court's witness. The court held the motion in abeyance, and when Hamlin's trial testimony was directly opposite to the statement she had given to the police, the court declared her to be the court's witness. The court did not abuse its discretion in declaring Hamlin to be the court's witness, and allowing the prosecutor to impeach her by use of her prior statement.
 {¶ 21} The first assignment of error is overruled.
 II {¶ 22} Appellant argues that his attorney was ineffective for failing to request a special instruction that the prior statement of Hamlin could not be considered as substantive evidence, but only to impeach credibility.
 {¶ 23} To demonstrate ineffective assistance of counsel, the defendant must show that counsel's performance fell below an objective standard of reasonableness, and that this performance prejudiced the defense. Strickland v. Washington (1984), 466 U.S. 668; State v. Bradley
(1989), 42 Ohio St.3d 136, cert. denied (1990), 497 U.S. 1011. To demonstrate prejudice, the defendant must show that but for counsel's errors, the result of the proceeding would have been different. Id.
 {¶ 24} Appellant does not argue that the State failed to meet the requirements of Evid.R. 613(B), which governs the admissibility of extrinsic evidence of a prior inconsistent statement. Rather, appellant argues that pursuant to Evid.R. 613, the evidence was admitted for the purpose of impeaching the witness, and because the evidence does not meet any of the hearsay exceptions, it may not be considered as substantive evidence of guilt. Appellant therefore argues that counsel was ineffective for failing to request a curative instruction on the jury's use of the statement.
 {¶ 25} Appellant has not demonstrated that the result of the trial would have been different had a curative instruction been given. In his trial testimony, Ryser testified that the telephone conversations in which the terms of the sale were agreed upon were conversations with appellant, not with Hamlin. Detective Yarbrough confirmed that the voice on the other end of the phone was male. Further, Ryser testified that after the officers left, appellant telephoned him concerning Christine Hamlin's whereabouts, therefore providing evidence that Hamlin delivered the drugs at appellant's direction. The record does not support appellant's argument that had the curative instruction been given, he would have been acquitted.
 {¶ 26} The second assignment of error is overruled.
 III {¶ 27} In his third assignment of error, appellant argues that the court erroneously allowed Detective Yarbrough to testify regarding the statements Christine Hamlin made to him concerning appellant. Appellant first argues that the statements were inadmissible hearsay, and also argues that his right to confront witnesses against him was violated by admission of these statements.
 {¶ 28} On questioning Detective Yarbrough, the prosecutor asked him about discussions with Hamlin which led to her written statement. He testified that she told him that she and appellant sold Oxycodone to support their crack addiction, and that she delivered the drugs to Ryser because appellant asked her to do so.
 {¶ 29} As discussed in II, above, appellant does not challenge the admissibility under Evid.R. 613 of Christine Hamlin's written statement to the police, but only challenges counsel's failure to request a curative instruction as to the use of the inconsistent statement. The statements Detective Yarbrough testified to were similar to those admitted through the impeachment of Christine Hamlin by way of her prior written statement. Any error in admitting these statements through the testimony of Detective Yarbrough was therefore harmless, as the evidence was cumulative.
 {¶ 30} Appellant's confrontation claim is grounded in the United States Supreme Court's decision in Bruton v. United States (1968),391 U.S. 123. In Bruton, a postal inspector testified about a confession one co-defendant, Evans, had made to the inspector. Evans had confessed that he and the other co-defendant, Bruton, had committed armed robbery. Neither Evans nor Bruton testified at trial. The court admitted the evidence, but instructed the jury that they could not use evidence from Evan's confession against Bruton. The United States Supreme Court reversed, and ruled that a substantial risk existed that the jury improperly relied on incriminating, extra judicial statements in determining the defendant's guilt. Id. The defendants should have been tried separately, in which case the postal inspector's testimony would not have been placed in front of the jury that determined Bruton's guilt. Id. The basis of the Bruton decision was Bruton's inability to confront and cross-examine Evans about his statements concerning Bruton's involvement. Although the evidence regarding Evan's confession was admissible against Evans as an admission of a party opponent, it was not admissible against Bruton, and Bruton was effectively prevented from confronting witnesses against him. Id. at 127-128.
 {¶ 31} In the instant case, there was not a joint trial. Hamlin testified, and was subject to cross-examination by appellant's counsel. Appellant's counsel later called Hamlin to the stand as a rebuttal witness to give favorable testimony to appellant regarding the possession of cocaine charge. The record does not demonstrate that Detective Yarbrough's statements concerning Hamlin's implication of appellant violated appellant's right to confront witnesses against him.
 {¶ 32} The third assignment of error is overruled.
 IV {¶ 33} Appellant argues that the jury's verdict is against the manifest weight of the evidence.
 {¶ 34} In considering a claim that a judgment is against the manifest weight of the evidence, we must review the entire record, weigh the evidence, and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52. The discretionary power to grant a new trial shall be exercised only in the exceptional case in which the evidence weighs heavily against conviction. Id.
 {¶ 35} Appellant's argument challenges Ryser's credibility. Appellant notes that Ryser is a convicted felon who was not wired for the transaction, and that the officers did not record his conversation with appellant. Appellant further argues that Ryser disliked him, and wanted him out of Christine Hamlin's house.
 {¶ 36} Ryser freely admitted on the stand that neither he nor his girlfriend liked appellant. He testified that he arranged the transaction with appellant, and this testimony was substantiated by Detective Yarbrough. Yarbrough testified that he listened to the telephone conversation wherein Ryser and appellant negotiated the terms of the transaction, and that the voice on the telephone was a male voice. Ryser further testified that appellant later called looking for Hamlin, after she had been arrested, stating that he wanted his money. The record does not demonstrate the jury clearly lost its way in believing the testimony of Ryser. Further, while Hamlin testified at trial that appellant had nothing to do with the transaction, she was impeached by use of her prior inconsistent statement to police, calling her credibility into question. This is not the exceptional case in which the evidence weighs heavily against conviction, requiring a new trial.
 {¶ 37} The fourth assignment of error is overruled.
 {¶ 38} The judgment of the Stark County Common Pleas Court is affirmed.
By Gwin, P.J., Hoffman, J., and Farmer, J., concur.
topic: aggravated trafficking — court's witness — manifest weight.